**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

|  |  |
|---|---|
| : | In re:   Chapter 11 |
| : |  |
| HERMELL PRODUCTS, INC.          : | Case No. 21-20284(jjt) |
| Debtor                                        : |  |
| : |  |
| : |  |
| HERMELL PRODUCTS, INC.          : |  |
| Movant                                       : |  |
| : |  |
| v.                                             : |  |
| : |  |
| WINSOR FEDERAL SAVINGS AND LOAN   : |  |
| ASSOCIATION                             : |  |
| THE BUSINESS BACKER, LLC,       : |  |
| UNITED STATES SMALL BUSINESS   : |  |
| ADMINISTRATION                        : |  |
| STATE OF CONNECTICUT ECONOMIC AND   : |  |
| COMMUNITY DEVELOPMENT          : |  |
| Respondents                              : | March 25, 2021 |
| : |  |

**EMERGENCY MOTION FOR PRELIMINARY AND FINAL ORDERS**
**AUTHORIZING DEBTOR TO USE CASH COLLATERAL**
**<u>AND GRANTING ADEQUATE PROTECTION</u>**

Pursuant to 11 U.S.C. §§ 361, 362, and 363 and Fed. R. Bankr. P. 4001 and 9014, the

debtor,  Hermell Products, Inc. (the "Debtor"),  debtor and debtor-in-possession, hereby moves

the Court for: (i) an order authorizing the use of cash collateral and granting adequate protection

on a preliminary basis; (ii) scheduling a final hearing on this motion; (iii) after holding such final

hearing, for an order authorizing the Debtor to use cash collateral and granting adequate

protection on a final basis; and (iv) granting related relief.

As set forth below, the use of cash collateral is emergently necessary to prevent immediate and irreparable loss or damage being caused to the Debtor and its Estate. If immediate authorization to use cash collateral is not provided, the Debtor will have to cease operations immediately, causing the business to be closed and otherwise destroyed as a going concern.

In support hereof, the Debtor respectfully states as follows:

## **INTRODUCTION**

1.      On March 25, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code (the "Code"). Pursuant to § 1184 of the Code, the Debtor continues to operate its business and manage its properties, affairs, and assets as debtor-in-possession. No examiner or committee has been appointed in this case. A Subchapter V trustee is expected to be appointed in this case.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court for this case and this motion pursuant to 28 U.S.C. § 1408 and 1409. The basis for relief requested herein is 11 U.S.C. §§ 105, 361, 363, 503, and 507, and Fed. R. Bankr. P. 4001 and 9014.

## BACKGROUND

3.      The Debtor is 52 year old business that produces but not limited to back health products, cervical and neck pain products, bandages, arm and leg pain orthopedic products, pregnancy and maternity care products, home health care patient products, mobility care products and accessories, wellness products and retail supplies.

4.      The Debtor operates offices and manufacturing facility of approximately 14,710 square feet located at 9 Britton Drive, Bloomfield, CT, 06002 (the "Property").

### Corporate Structure

5.      The Debtor is an "S" Corporation. The management of the Debtor is vested in its sole owner Ronald Pollack.  The Management team consists of BettyAnn Cuozzo, Kristine Jarinka and Seida Velic.

6.      The Debtor is lessor of the Property pursuant to a seven year lease agreement (the "Lease") entered into between the Debtor and The Bloomfield Property Group LLC. Of 40 Callender Road, Watertown, CT.  The lease runs through August 31, 2027.

### Events Leading to Bankruptcy Filing

7.      In the last four years Hermell Products Inc. lost key employees to retirement and unexpected death.  The loss of these key employees caused a negative effect on sales and business.

8.      In addition, the Debtor suffered significant losses in 2020 year-to-date due to the current global pandemic, as described below.

9.      Governor Lamont issued Executive Order No. 7 on March 10, 2020, a declaration of public health and civil preparedness emergencies, proclaiming a state of emergency throughout the State of Connecticut as a result of the coronavirus disease 2019 ("COVID-19") outbreak in the United States and confirmed spread in Connecticut.

10.     COVID-19 is a respiratory disease that spreads easily from person to person and may result in serious illness or death. The World Health Organization has declared the COVID-19 outbreak a pandemic.

11.     To reduce the spread of COVID-19, the United States Centers for Disease Control and Prevention and the Connecticut Department of Public Health recommended implementing community mitigation strategies to increase containment of the virus and to slow down the transmission of the virus which resulted in delay in obtaining raw materials, reduction in purchase orders and temporary layoffs of employees or reduction of hours.

12.     Since March 2020, as a result of COVID-19 and the loss of key employees, the Debtor has suffered a severe reduction in revenue and ability to operate.

**The Debtor's Capital Structure**

13.     The Debtor was also approved for emergency COVID-19 assistance in 2020. It received a Paycheck Protection Program loan in the approximate amount of $122,048.82, and a United States Small Business Administration ("SBA") Economic Injury Disaster Loan in the approximate amount of $150,000.00. The SBA loan is secured by a UCC-1 filing.  These loans allowed the Debtor to retain its existing employees and keep the door open during the pandemic.  In addition the Debtor has utilized certain secured lines of credit through Windsor Federal Savings and Loan Association which are currently in the approximate amount of $325,000.00.

## **DEBTOR'S REQUEST TO USE CASH COLLATERAL**

14.     Upon information and belief, the following parties-in-interest may claim an interest in the Debtor's "cash collateral," as that term is defined by Bankruptcy Code § 363(a):

  a.  Windsor Federal Savings and Loan Association

  b.  The Business Backer;

  c.  The U.S. Small Business Administrator.

  d.  State of Connecticut Department of Economic and Community Development

15.     The parties-in-interest listed above, which may hold alleged secured interests in the Debtor's cash collateral, are collectively referred to as the "Claimants".

16.     By this motion, the Debtor seeks (a) the scheduling, pursuant to Fed. R. Bankr. P. 4001, of a preliminary hearing on this motion (the "Preliminary Hearing") on or before April 1, 2021; (b) at the Preliminary Hearing, the entry of a preliminary order in the form attached hereto (the "Preliminary Order") authorizing the Debtor to use cash collateral in accordance with the budget annexed hereto as Exhibit A (the "Budget") and granting adequate protection to parties claiming an interest in the Debtor's cash collateral; (c) the scheduling, pursuant to Fed. R. Bankr. P. 4001, of a final hearing on this motion (the "Final Hearing") within approximately twenty-one (21) days of the commencement of this Chapter 11 case; (d) the establishment of certain notice procedures for the Final Hearing; and (e) at the Final Hearing, the entry of a final order (the "Final Order", together with the Preliminary Order, the "Cash Collateral Order") authorizing the Debtor to use cash collateral in accordance with the Budget and granting adequate protection to parties claiming an interest in the Debtor's cash collateral.

## **LEGAL BASIS FOR RELIEF**

17.     Bankruptcy Code § 363(e) provides that: "on request of an entity that has an interest in property used . . . or proposed to be used by a debtor-in-possession, the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."

18.     Bankruptcy Code § 361 sets forth the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridee v. Production Credit Assoc. and Federal Land Bank*, 104 B.R. 824 (E.D. Mich. 1989); *In re Leduemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

19.     To the extent the Claimants' loans are secured by duly perfected non-avoidable liens in the Debtor's "cash collateral", as such term is defined under Bankruptcy Code § 363(a), § 363(c)(2) requires that the Claimants consent to, or this Court authorize, the Debtor's use of such property.

20.     By this Motion, the Debtor seeks to use cash collateral on a preliminary basis from the date of the hearing on this Motion through April 15, 2021 (the "Preliminary Cash Collateral Period") and on a final basis until July 16, 2021 to pay actual, necessary, ordinary course operating expenses.

21.     Subject to the terms and conditions proposed herein, the Debtor is requesting that the Court grant the following pursuant to, and subject to, Bankruptcy Code §§ 361, 362, 363, 503 and 507, as adequate protection for any diminution in value of collateral resulting from the Debtor's use of cash collateral:

22.     In exchange for the continued use of cash collateral by the Debtor, and as further

adequate protection for the Claimants' interests therein, and in addition to the provisions of

Bankruptcy Code § 552(b), the Debtor grants the Claimants, in accordance with Bankruptcy

Code §§ 361(2), 363(c), and 363(e), senior security interests (the "Replacement Liens") in, and

liens upon, to attach to the same validity, extent, and priority that the Claimants possess as to

said liens on the Petition Date, but only to the extent the amount of their respective secured

position erodes in value, all personal property and real estate now owned, or hereafter created or

acquired or generated by the Debtor, whether existing prior to the Petition Date or coming into

being or in the possession of the Debtor thereafter including, without limitation, all of the

Debtor's accounts, inventory, general intangibles, trademarks, licenses, contract rights, insurance

proceeds or refunds, tax refunds, chattel paper, documents, instruments and securities,

machinery, equipment, and all proceeds, products, rents and profits of all of the foregoing,

whether acquired through the use of cash collateral, or from the extension of post-petition

financing ("DIP Assets"). Notwithstanding anything else in the Preliminary Order to the

contrary, nothing therein shall grant the Claimants a Replacement Lien in claims and/or causes

of actions arising under Bankruptcy Code, Chapter 5.

23.     The liens of the Claimants and any Replacement Liens, and any priority to which

the Claimants may be entitled or become entitled under Bankruptcy Code § 507(b) shall forever

be subject to: (i) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the

Clerk of the Court; (ii) liens for taxes owed to governmental entities, including sales and

withholding taxes to the extent such liens have priority over the liens and Replacement Liens of

the Claimants under applicable non-bankruptcy law; (iii) the allowed administrative claims of

attorneys and other professionals retained by the Debtor in this Chapter 11 case pursuant to

Bankruptcy Code § 327 and accrued during the Preliminary Cash Collateral Period of up to

$20,000.00; and (iv) amounts due and owing to the Debtor's employees for post-petition wages, accrued during all cash collateral periods not to exceed the priority amount of said claims pursuant to Bankruptcy Code § 507(a)(4) (collectively, items (i) through (iv) are referred to as (the "Carve Outs").

24.     The Debtor submits that the use of cash collateral on the terms and conditions set forth herein is necessary to preserve and maximize the value of the Debtor's estate. The Debtor submits that unless the use of cash collateral is authorized on an emergency preliminary basis, in the amounts and for the purposes specified herein, its estate will suffer immediate and irreparable harm.

25.     Adequate protection is not expressly defined in the Bankruptcy Code, except by the implications of the example of adequate protection listed in Bankruptcy Code § 361. *Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994). The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and to protect the secured creditor from diminution in the value of its collateral during the reorganization process. *In re Continental Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993).

26.     Thus, the Replacement Liens described above are intended to preserve the Claimants' positions at the time of the bankruptcy filing.

27.     Without the use of cash collateral, the Debtor will be unable to pay the necessary and operating expenses to maintain and protect its business operations, thereby resulting in loss to its going concern value to the detriment of the Debtor, its creditors, and the estate.

28.     Consistent with the above requirements, courts repeatedly have recognized that the use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and, thus, maximize the value of an estate for all interested parties. *Chrysler Credit Corp. v. George Ruggiere Chrysler-Plymouth, Inc. (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1019 (11th Cir. 1984) (approving use of cash collateral over objection of secured parties after nothing that "without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated"); *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1398-99 (10th Cir. 1987).

29.     The entry of an order authorizing preliminary cash collateral and providing adequate protection will minimize disruption of the Debtor's business operations, permit the Debtor to pay necessary expenses, and is in the best interests of the Debtor, its creditors, and the estate.

**Additional Compliance with Local Bankr. R. 4001-3**

30.     Pursuant to Local Bankr. R. 4001-3(a)(5) and (g)(2), the proposed order does not provide for a roll up or extension of post-petition financing.

31.     Notice Requirements:  Debtor proposes that the Debtor's Motion for Preliminary Use of Cash Collateral, the Preliminary Order and notice of the preliminary hearing be served by the Debtor on the Debtor's 20 largest unsecured creditors, Windsor Federal Savings and Loan and their counsel, The Business Backer LLC, U.S. Small Business Administration, State of Connecticut Economic and Community Development Office, The office of the United States Trustee and all parties requesting notice in this case, by either overnight mail via Federal Express, facsimile transmission or electronic mail and that notice provided as stated above be deemed sufficient and adequate notice and that no further notice of the relief sought at the

preliminary hearing be necessary or required and notice be given at least 2 days prior to the scheduled hearing on the preliminary motion to use cash collateral.

**WHEREFORE**, the Debtor requests that this Court enter an order, pursuant to Bankruptcy Code § 363(c)(2) and Fed. R. Bankr. P. 4001(b)(1), granting the preliminary relief sought herein for the use of cash collateral; and for such further and other relief as this Court deems just and proper.

THE DEBTOR:
HERMELL PRODCUTS INC.

By: _____
Anthony S. Novak, Esq.
Novak Law Office P.C.
280 Adams Street
Manchester, CT 06042
860-432-7710
Anthonysnovak@aol.com
Federal Bar #ct09074

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| | : | In re:   Chapter 11 |
| | : | |
| HERMELL PRODUCTS, INC. | : | Case No. 21-20284(jjt) |
| Debtor | : | |
| | : | |
| | : | |
| HERMELL PRODUCTS, INC. | : | |
| Movant | : | |
| | : | |
| vi. | : | |
| | : | |
| WINSOR FEDERAL SAVINGS AND LOAN | : | |
| ASSOCIATION | : | |
| THE BUSINESS BACKER, LLC, | : | |
| UNITED STATES SMALL BUSINESS | : | |
| ADMINISTRATION | : | |
| STATE OF CONNECTICUT ECONOMIC AND | : | |
| COMMUNITY DEVELOPMENT | : | |
| Respondents | : | March 25, 2021 |
| | : | |

**STIPULATION AND ORDER (1) GRANTING MOTION FOR PRELIMINARY ORDER
AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND GRANTING
ADEQUATE PROTECTION, (2) SCHEDULING HEARING ON FINAL USE OF CASH
COLLATERAL, AND (3) GRANTING RELATED RELIEF**

Upon the *Motion for Preliminary and Final Orders Authorizing Debtor to Use Cash
Collateral and Granting Adequate Protection, (2) Scheduling Hearing on Final Use of Cash
Collateral, and (3) Granting Related Relief* (the "Motion") filed by Hermell Products, Inc. (the
"Debtor"), as debtor and debtor-in-possession, seeking, among other things, entry of this
preliminary order (the "Preliminary Order") authorizing the Debtor to use cash collateral in
accordance with the budget annexed thereto as <u>Exhibit A</u> (the "Budget") and granting adequate

protection; and

The Debtor having requested in the Motion that (a) pending the final hearing on the

Motion, a hearing be scheduled on an expedited basis (the "Preliminary Hearing") to consider

entry of this preliminary order and (b) that a final hearing (the "Final Hearing") be scheduled on

the Motion to consider entry of a final order (the "Final Order") authorizing and approving, on a

final basis, the Debtor's use of cash collateral; and

Notice of the Preliminary Hearing having been given to (a) the U.S. Trustee; (b) the

Claimants, as defined in the Motion, which includes counsel to Windsor Federal Savings and

Loan Association, The Business Backer, LLC, State of Connecticut Department of Economic

and Community Development and the United States Small Business Administration and its

counsel; (c) the twenty largest unsecured creditors of the Debtor (collectively with (a) and (b),

the "Notice Parties"); and it appearing that on the record made in this case (as defined below)

and after considering the Debtor's immediate need for use of cash collateral, no other or further

notice need be given; and the Claimants having consented to the Debtor's use of cash collateral

in accordance with this Preliminary Order;

**IT IS HEREBY FOUND AND STIPULATED THAT**:

A.      Filing: On March 25, 2021, the Debtor filed a voluntary petition for relief

under Subchapter V of Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy

Code"). Pursuant to Bankruptcy Code § 1184, the Debtor continues to operate its business and

manage its properties, affairs, and assets as debtor-in-possession.

B.  <u>Jurisdiction</u>. The Court's consideration of the Motion and this Final Order is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (M). The statutory predicates for the relief sought herein are Bankruptcy Code §§ 361, 362 and 363 and Fed. R. Bankr. P. 4001(b).

C.  <u>Committee/Examiner</u>: No examiner or committee has been appointed in this case. A Subchapter V trustee is expected to be appointed in this case.

D.  <u>The Debtor's Stipulations</u>. Without prejudice to the rights of any party other than the Debtor, the Debtor admits, stipulates and agrees that:

1.  Windsor Federal Savings and Loan Association holds valid pre-petition personal property liens and first priority security interests in all of the Debtors assets (including without limitation all of the Debtors personal property, fixtures and account receivables) by virtue of certain security agreements and UCC-1 filings with the Secretary of State, State of Connecticut.

2.  The State of Connecticut, Department of Economic and Community Development may hold valid personal property lien and security interest in certain personal property of the debtor by virtue of certain security agreements and UCC-1 filings with the Secretary of State, State of Connecticut.

3.  The United States of America, U.S. Small Business Administration may hold a valid personal property lien and security interest in certain personal property of the debtor by virtue of certain security agreements and UCC-1 filings with the Secretary of State, State of Connecticut.

4.      The Motion, the proposed Preliminary Order and notice of the Preliminary

Hearing was served by the Debtor on: the Debtor's twenty largest unsecured creditors; counsel

for Windsor Federal Savings and Loan Association, The Business Backer, LLC, and the United

States Small Business Administration and its counsel; the Office of the United States Trustee,

and all parties requesting notice in this case by overnight mail via Federal Express, facsimile

transmission, or electronic mail. The notice provided of the Motion and the Preliminary Hearing

is sufficient and adequate notice, and no further notice of the relief sought at the Preliminary

Hearing is necessary or required.

Record. Based on the record, pursuant to Bankruptcy Code §§ 105 and 363 and

Fed. R. Bankr. P. 4001(b), notice of the Preliminary Hearing was adequate as set forth herein and

on the record.

**NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.      Authorization to Use Cash Collateral: Pursuant to Bankruptcy Code §

363(c)(2)(B), the Debtor is hereby authorized from the date of this Preliminary Order until the

earlier of April 15, 2021 or the occurrence of a Termination Event (as defined below) that

causes the cessation of such authority as set forth in Paragraph 17 (the "Preliminary Cash

Collateral Period") to use cash collateral as defined in Section 363(a) (of the Bankruptcy

Code, to pay actual, necessary ordinary course operating expenses as set forth in, and in

accordance with Exhibit A (the "Budget"), appended hereto to avoid immediate and

irreparable harm to the estate. During each week (the "Budget Period"), the Debtor's actual

cash receipt shall not be less than the budgeted cash receipts by more than ten (10%) percent

and the Debtor's actual disbursements shall not be more than the budgeted disbursements by

more than 10 percent, each calculated on a cumulative basis (the "Permitted Variance").

2.     <u>**Hearing on Final Use of Cash Collateral**</u>: **A hearing to consider the final use of Cash Collateral shall be held on_____, 2021 at___:00 p.m. via Zoom.gov. Please email Calendarconnect_hd@ctb.uscourts.gov to obtain log in information. The Debtor shall file and serve its proposed Final Order and Budget on or before 5:00 PM on _____, 2021. Any objections to the Debtor's continued use of cash collateral shall be filed and served on or before 5:00 PM on _____, 2021.**

3.     <u>Status Quo of Prepetition Obligations Maintained; Adequate Protection</u>: Except as set forth above in the "Debtor's Stipulations," nothing contained herein shall in any way affect or impair the status of the validity, perfection, amount and extent of the Claimants' respective security interests in any of their respective collateral, or the Debtor's right to object to the validity, perfection, amount and extent of such security interests.

4.     In exchange for the continued use of Cash Collateral by the Debtor, and as adequate protection for the Claimants' interests therein, and in addition to the provisions of Bankruptcy Code § 552(b), the Claimants are hereby granted, in accordance with Bankruptcy Code §§ 361(2), 363(c), and 363(e), senior security interests (the "Replacement Liens") in, and liens upon, to attach to the same validity, extent, and priority that the Claimants possessed as to said liens on the Petition Date, but only to the extent the amount of their respective secured position erodes in value post-petition (the "Diminution in Value"), all personal property and real estate now owned, or hereafter created or acquired or generated by the Debtor, whether existing prior to the Petition Date or coming into being or in the possession of the Debtor thereafter including, without limitation, all of the Debtor's accounts, inventory, general intangibles,

trademarks, licenses, contract rights, insurance proceeds or refunds, tax refunds, chattel paper, documents, instruments and securities, machinery, equipment, and all proceeds, products, rents and profits of all of the foregoing, whether acquired through the use of Cash Collateral, or from the extension of post-petition financing ("DIP Assets").

5.    As further adequate protection, and to the extent provided by Bankruptcy Code §§ 503(b) and 507(b), the Claimants shall have allowed administrative expense claims senior to any and all other administrative expense claims to the extent of post-petition Diminution in Value, if any, except with respect to the Carve Outs (as defined below) (the "507(b) Claims").

6.    Notwithstanding anything else in this Preliminary Order to the contrary, nothing herein shall grant the Claimants a Replacement Lien in claims and/or causes of action arising under Chapter 5 of Title 11, 11 U.S.C. § 501, *et seq.*

7.    It is the purpose and intent of this Preliminary Order to allow the Debtor to use its accounts and accounts receivable and other collateral that constitute Cash Collateral of the Claimants on a revolving basis and to provide the Claimants with a lien upon post-petition assets so that the Claimants' interests therein will not be diminished during the pendency of these Chapter 11 proceedings. The respective secured position of the Claimants that existed on the Petition Date may not improve by virtue of the granting of the Replacement Liens as set forth herein.

8.      All Replacement Liens, to the extent granted pursuant to this Preliminary Order, shall be and hereby are (a) in addition to all security interests, liens and rights of setoff, rights of recoupment existing in favor of the Claimants on the Petition Date; (b) deemed effective, valid and perfected as of the Petition Date, without the necessity of the filing or lodging by any person of any documents or other instruments otherwise required to be filed or lodged under applicable non-bankruptcy law for the perfection of security interests, with such security interests and liens, to the extent granted, validity and perfection being binding upon any successor entity or entities or subsequently appointed trustee in any proceeding under any chapter of the Bankruptcy Code and upon any and all other creditors of the Debtor who have extended or who may hereafter extend credit to the Debtor, or assert a claim of any nature or in any manner whatsoever in this case or any superseding bankruptcy case of the Debtor, whether or not notice of the filing of this case has been filed in any state or county in which the Debtor's assets may ever be located; and (c) intended to be adequate protection for the Debtor's use of Cash Collateral. The Claimants shall not be required to file any UCC-1 Financing Statement in any jurisdiction or take any other action (including possession of the Collateral and/or DIP Assets, or any portion thereof) in order to further establish the security interests provided for hereunder. This Order shall be sufficient and conclusive evidence of the granting of the Claimants' security interests and liens upon the DIP Assets.

9.      The Claimants may, in their discretion, file a certified copy of this Preliminary Order in any filing or recording office in which the Debtor has any property or office. If the Claimants, in their sole discretion, choose to file such financing statements or other documents or otherwise confirm perfection of such security interests and liens, all such financing statements or similar documents shall be deemed to have been filed or recorded as of the Petition Date. The Debtor shall execute and deliver to the Claimants any agreement, financing statement, instruments or other documents as the Claimants may reasonably request from time to time to effectuate, evidence, confirm, validate or perfect the security interests and liens provided for herein. Nothing in this Order shall in any way restrict the scope of the Claimants' pre-petition liens, security interests, rights of setoff or claims.

10.     Other than as expressly set forth in the "Debtor's Stipulations" above, nothing in this Preliminary Order shall be deemed to be an adjudication or a declaration by the Court of rights with respect to the existence, validity, enforceability, subordination or priority of, or any causes of action relating to the liens or security interests granted by the Debtor or possessed by the Claimants prior to the Petition Date.

11.     Challenge to Validity of Prepetition Lien: Except as set forth in the "Debtor's Stipulations" above, and only with respective the Debtor's rights, this Preliminary Order is without prejudice to the ability of the Debtor and any other party-in-interest to investigate or challenge the Claimants' claims or the validity, extent and priority of their liens, and neither the Debtor nor any other party-in-interest shall be deemed to have waived any other rights that they may have in or against the Claimants or their interest in property, which rights are expressly

reserved. *The deadline for any party to contest or challenge the validity or perfection of the Claimants' liens and replacement liens or security interest is the later of (a) _____ 2021 or (b) 60 days after appointment of a creditors' committee, provided this Court enters an order authorizing such appointment under §1181(b) of the Bankruptcy Code, should one be appointed (the "Challenge Period"). Nothing contained in this Preliminary Order shall be deemed to be a finding by this Court or an admission by the Claimants with respect to adequate protection (as such term is defined by Bankruptcy Code § 361) of the interests of the Claimants.* Notwithstanding the passage of the Challenge Period, nothing herein shall constitute a determination of the amount of any debt owed by any Claimant or a release of any affirmative claims of the Debtor, except as set forth in the "Debtor's Stipulations" above.

12.     Except to the extent expressly provided herein, nothing contained in this Preliminary Order shall prejudice, impair or otherwise adversely affect the rights of the Claimants under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right, at any time, in their sole discretion, to demand adequate protection, to request relief from the automatic stay, to move to convert this case to a case under Chapter 7 of the Bankruptcy Code, to object to any plan of reorganization or disclosure statement, to request the appointment of a trustee or examiner, or to seek the termination of, or object to the extension of, the period during which the Debtor enjoys the exclusive right to propose and/or seek to obtain confirmation of a plan of reorganization.

13.    <u>Carve Outs</u>: The liens of the Claimants and any Replacement Liens, and any priority to which the Claimants may be entitled or become entitled under Bankruptcy Code § 507(b) shall be forever subject to (i) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Court; (ii) liens for taxes owed to governmental entities, including sales and withholding taxes to the extent such liens have priority over the liens and Replacement Liens of the Claimants under applicable non-bankruptcy law; (iii) the allowed administrative claims of attorneys and other professionals retained by the Debtor in this Chapter 11 case pursuant to Bankruptcy Code § 327 accrued during any cash collateral periods, in the amount of $20,000.00 for proposed counsel Novak Law Office P.C. or other professionals employed by the Debtor including the Chapter 11 Trustee for the Preliminary Cash Collateral Period only; and (iv) amounts due and owing to the Debtor's employees for post-petition wages, accrued during all cash collateral periods not to exceed the priority amount of said claims pursuant to § 507(a)(4) (collectively, items (i) through (iv) are referred to as the "Carve Outs").

14.    All notices required to or permitted to be given to the Debtor under this Preliminary Order shall be addressed as follows, and shall be deemed received one day after being sent by overnight mail and on the day it is sent if sent by email:

DEBTOR:            HERMELL PRODUCTS INC.
                   Attn: Ronald Pollack
                   9 Britton Drive
                   Bloomfield, CT 06002

With a copy to:    NOVAK LAW OFFICE P.C.
                   Attn: Anthony S. Novak, Esq.
                   280 Adams Street
                   Manchester, CT 06042
                   anthonysnovak@aol.com

15.     The Debtor shall, on or before_____, 2021, transmit copies of a notice of the

entry of this Preliminary Order, together with a copy of the proposed final order, to the Notice

Parties, and to any party which has filed prior to such date a request for notices with this Court.

The notice of entry of this Preliminary Order shall state the date of the final hearing, and that any

party in interest objecting to the entry of the final order shall file written objections with the

Clerk of the United Bankruptcy Court for the District of Connecticut no later than 4:00 p.m. on

____, 2021, and shall serve such objections so that the same are received on or before such date

by: (a) Novak Law Office P.C., 280 Adams Street, Manchester, CT 06042, Attn: Anthony S.

Novak, Esq., counsel for the Debtor; (b) the Office of the United States Trustee, Giaimo Federal

Building, 150 Court Street, New Haven, CT 06510.

16.     <u>Termination Events</u>. The Debtor's authority to use Cash Collateral shall

terminate (a) upon written notice of any of the Termination Events described in subsections (i)-

(iii) and (viii)-(ix), and the failure of the Debtor within three business days of receipt of such

notice to either cure such Termination Event or request a hearing on an emergency basis to

contest the existence of such Termination Event, or (b) automatically without further notice or

court proceedings upon the occurrence of any of the Termination Events described in subsections

17.     - (vii). The "Termination Events" are as follows: (i) the Debtor's failure to comply

with the material terms of this Preliminary Order; (ii) the Debtor shall or shall seek to create,

incur, or suffer to exist any post-petition liens or security interests that are *parri passu* or senior

to the Replacement Liens (iii) the Debtor shall or shall seek to create, incur, or suffer any claim

that is *parri passu* or senior to the Bankruptcy Code § 507(b) Claims (other than the Carve Outs);

(iv) the Debtor's failure to adhere to the Budget during a Budget Period, except with respect to a

Permitted Variance within such Budget Period.

18.    <u>Reporting Obligations</u>. The Debtor shall provide to the court by each Wednesday following the close of a Budget week, a report of its actual receipts and disbursements for the prior week with a comparison to the Budget, along with a statement of cash on hand and receivables at the beginning and end of such week. The Debtor shall provide such other additional documents and information that the court may require in connection with analyzing the Budget, compliance with the Budget, and any proposed Budget for future periods.

| | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7620 | Marketing Co-Op Expenses | 705.58 | 0.35% | 644.22 | 0.35% | 613.55 | 0.35% | 674.90 | 0.35% | 644.22 | 0.35% | 674.90 | 0.35% | 644.22 | 0.35% | 644.22 | 0.35% | 613.55 | 0.35% | 644.22 | 0.35% | 7,730.68 | 0.35% | 0.3640% |
| 7630 | Advertising Expense | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | |
| 7640 | Website | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| 7600 | Total Marketing and Advertising | 705.58 | 0.35% | 644.22 | 0.35% | 613.55 | 0.35% | 674.90 | 0.35% | 644.22 | 0.35% | 674.90 | 0.35% | 644.22 | 0.35% | 644.22 | 0.35% | 613.55 | 0.35% | 644.22 | 0.35% | 7,730.68 | 0.35% | |
| 7650 | Office Supplies | 471.38 | 0.23% | 430.39 | 0.23% | 409.90 | 0.23% | 450.88 | 0.23% | 430.39 | 0.23% | 450.88 | 0.23% | 430.39 | 0.23% | 430.39 | 0.23% | 409.90 | 0.23% | 448.79 | 0.24% | 5,183.08 | 0.23% | 0.2316% |
| 7600 | Phtot & Graffic Art | 232.43 | 0.11% | 212.22 | 0.11% | 202.12 | 0.11% | 222.33 | 0.11% | 212.22 | 0.11% | 222.33 | 0.11% | 212.22 | 0.11% | 212.22 | 0.11% | 202.12 | 0.11% | 227.83 | 0.12% | 2,562.27 | 0.11% | 0.1142% |
| 7670 | Postage Expense | 74.09 | 0.04% | 67.64 | 0.04% | 64.42 | 0.04% | 70.86 | 0.04% | 67.64 | 0.04% | 70.86 | 0.04% | 67.64 | 0.04% | 67.64 | 0.04% | 64.42 | 0.04% | 72.66 | 0.04% | 816.74 | 0.04% | 0.0364% |
| | Professional Fees | | | | | | | | | | | | | | | | | | | | | | | |
| 7710 | Legal Expenses | 1,660.42 | 0.82% | 1,660.42 | 0.89% | 1,660.42 | 0.94% | 1,660.42 | 0.85% | 1,660.42 | 0.89% | 1,660.42 | 0.85% | 1,660.42 | 0.89% | 1,660.42 | 0.89% | 1,660.42 | 0.94% | 1,660.42 | 0.89% | 19,925.00 | 0.89% | 0.0552% |
| 7720 | Outside CPA | 500.00 | 0.25% | 500.00 | 0.27% | 500.00 | 0.28% | 500.00 | 0.26% | 500.00 | 0.27% | 500.00 | 0.26% | 500.00 | 0.27% | 500.00 | 0.27% | 500.00 | 0.28% | 500.00 | 0.27% | 6,000.00 | 0.27% | 0.1549% |
| 7730 | Accounting Fees | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | |
| 7700 | Total Professional Fees | 2,160.42 | 1.06% | 2,160.42 | 1.16% | 2,160.42 | 1.22% | 2,160.42 | 1.11% | 2,160.42 | 1.16% | 2,160.42 | 1.11% | 2,160.42 | 1.16% | 2,160.42 | 1.16% | 2,160.42 | 1.22% | 2,160.42 | 1.16% | 25,925.00 | 1.16% | |
| 7750 | Recruiting Related Expenses | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | |
| 7760 | Rent | 3,000.00 | 1.47% | 3,000.00 | 1.61% | 3,000.00 | 1.70% | 3,000.00 | 1.54% | 4,000.00 | 2.15% | 4,000.00 | 2.05% | 4,000.00 | 2.15% | 4,000.00 | 2.15% | 4,000.00 | 2.26% | 4,000.00 | 2.15% | 42,000.00 | 1.88% | |
| 7770 | Samples & Supplies | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | |
| 7780 | Security Monitoring & Reparis | 87.11 | 0.04% | 79.54 | 0.04% | 75.75 | 0.04% | 83.32 | 0.04% | 79.54 | 0.04% | 83.32 | 0.04% | 79.54 | 0.04% | 79.54 | 0.04% | 75.75 | 0.04% | 79.54 | 0.04% | 954.44 | 0.04% | 0.0428% |
| 7790 | Telephone & Communication cost | 621.59 | 0.31% | 567.54 | 0.31% | 540.51 | 0.31% | 594.56 | 0.31% | 567.54 | 0.31% | 594.56 | 0.31% | 567.54 | 0.31% | 567.54 | 0.31% | 540.51 | 0.31% | 567.54 | 0.31% | 6,810.42 | 0.31% | 0.3075% |
| | Travel and Meals | | | | | | | | | | | | | | | | | | | | | | | |
| 7810 | Airfare-Sales | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| 7870 | Meals & Entertainment-Exec/Acctg | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| 7880 | Meal & Entertainment -Sales | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| 7890 | Park and Tolls | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| 7800 | Total Travel and Meals | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| 7895 | Uniforms | 42.74 | 0.02% | 39.03 | 0.02% | 37.17 | 0.02% | 40.88 | 0.02% | 39.03 | 0.02% | 40.88 | 0.02% | 39.03 | 0.02% | 39.03 | 0.02% | 37.17 | 0.02% | 39.03 | 0.02% | 468.30 | 0.02% | 0.0210% |
| | Utilities | | | | | | | | | | | | | | | | | | | | | | | |
| 7910 | Electric Expense | 1,690.11 | 0.83% | 1,717.01 | 0.92% | 1,656.82 | 0.94% | 1,849.42 | 0.95% | 2,295.47 | 1.24% | 2,348.00 | 1.21% | 2,030.28 | 1.09% | 2,094.64 | 1.13% | 2,661.35 | 1.50% | 2,146.82 | 1.16% | 23,821.29 | 1.07% | 1.2130% |
| 7920 | City Water and Sewer Cost | 188.69 | 0.09% | 409.86 | 0.22% | 140.68 | 0.08% | 169.72 | 0.09% | 154.62 | 0.08% | 150.19 | 0.08% | 167.87 | 0.09% | 362.85 | 0.20% | 161.89 | 0.09% | 197.87 | 0.11% | 2,754.71 | 0.12% | 0.1118% |
| 7930 | Natural Gas Heating Expenses | 2,208.15 | 1.08% | 2,097.63 | 1.13% | 1,484.42 | 0.84% | 616.77 | 0.32% | 566.57 | 0.30% | 560.00 | 0.29% | 599.17 | 0.32% | 813.89 | 0.44% | 1,426.38 | 0.81% | 971.16 | 0.52% | 18,311.03 | 0.82% | 0.8189% |
| | Total Utilities | 4,086.95 | 2.01% | 4,224.50 | 2.27% | 3,281.92 | 1.85% | 2,635.91 | 1.35% | 3,016.66 | 1.62% | 3,058.19 | 1.57% | 2,797.32 | 1.51% | 3,271.38 | 1.76% | 4,249.62 | 2.40% | 3,315.85 | 1.78% | 44,887.03 | 2.01% | |
| 7940 | Web Site Maintenance & Design | 119.47 | 0.06% | 109.08 | 0.06% | 103.89 | 0.06% | 114.28 | 0.06% | 109.08 | 0.06% | 114.28 | 0.06% | 109.08 | 0.06% | 109.08 | 0.06% | 103.89 | 0.06% | 109.08 | 0.06% | 1,309.01 | 0.06% | 0.0587% |
| 8000 | Taxes | 14.45 | 0.01% | 13.19 | 0.01% | 12.57 | 0.01% | 13.82 | 0.01% | 13.19 | 0.01% | 13.82 | 0.01% | 13.19 | 0.01% | 13.19 | 0.01% | 12.57 | 0.01% | 13.19 | 0.01% | 158.33 | 0.01% | 0.0071% |
| 8100 | Company Personal Property Tax | 213.22 | 0.10% | 194.68 | 0.10% | 185.41 | 0.10% | 203.95 | 0.10% | 194.68 | 0.10% | 203.95 | 0.10% | 194.68 | 0.10% | 194.68 | 0.10% | 185.41 | 0.10% | 194.68 | 0.10% | 2,336.16 | 0.10% | 0.1100% |
| 8200 | City & State & Fed Taxes | 440.40 | 0.22% | 402.11 | 0.22% | 382.96 | 0.22% | 407.72 | 0.21% | 402.11 | 0.22% | 421.26 | 0.22% | 402.11 | 0.22% | 402.11 | 0.22% | 382.96 | 0.22% | 402.11 | 0.22% | 2,494.49 | 0.11% | |
| 8300 | Real Estate Tax | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | |
| | Interest Expense | | | | | | | | | | | | | | | | | | | | | | | |
| 8010 | Interest Expense-Other | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| 8011 | MTG | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| 8012 | Credit Cards | 95.66 | 0.05% | 87.34 | 0.05% | 83.18 | 0.05% | 91.50 | 0.05% | 87.34 | 0.05% | 91.50 | 0.05% | 87.34 | 0.05% | 87.34 | 0.05% | 83.18 | 0.05% | 87.34 | 0.05% | 1,048.10 | 0.05% | 0.0470% |
| 8013 | Interest Loans | 1,200.00 | 0.59% | 1,200.00 | 0.65% | 1,200.00 | 0.68% | 1,200.00 | 0.62% | 1,500.00 | 0.81% | 1,500.00 | 0.77% | 1,500.00 | 0.81% | 1,500.00 | 0.81% | 1,500.00 | 0.85% | 1,500.00 | 0.81% | 16,200.00 | 0.73% | 0.0000% |
| 8014 | Loan Fees | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| 8016 | Late Fee | 296.55 | 0.15% | 270.76 | 0.15% | 257.87 | 0.15% | 283.65 | 0.15% | 270.76 | 0.15% | 283.65 | 0.15% | 270.76 | 0.15% | 270.76 | 0.15% | 257.87 | 0.15% | 270.76 | 0.15% | 3,249.11 | 0.15% | 0.1457% |
| 8010 | Total Intest Expense | 1,592.21 | 0.78% | 1,558.10 | 0.84% | 1,541.05 | 0.87% | 1,575.15 | 0.81% | 1,858.10 | 1.00% | 1,875.15 | 0.96% | 1,858.10 | 1.00% | 1,858.10 | 1.00% | 1,841.05 | 1.04% | 1,858.10 | 1.00% | 20,497.21 | 0.92% | 0.0000% |
| 9998 | Miscellaneous Expense | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.00 | 0.00% | 0.0000% |
| | Total Expense | 47,639.94 | 23.41% | 46,706.66 | 25.13% | 50,652.14 | 28.62% | 45,627.52 | 23.44% | 47,224.84 | 25.41% | 52,774.37 | 27.11% | 46,579.50 | 25.07% | 52,924.21 | 28.48% | 48,109.78 | 27.18% | 47,847.10 | 25.75% | 586,211.87 | 26.29% | |
| | Net Ordinary Income | 14,171.41 | 6.96% | 7,594.04 | 4.09% | 6,246.97 | -3.53% | 12,428.51 | 6.38% | 7,075.88 | 3.81% | 858.57 | -0.44% | 7,721.22 | 4.15% | 4,763.73 | -2.56% | 2,435.62 | 1.38% | 6,453.61 | | 41,113.90 | 23.23% | |

